OPINION OF THE COURT
Chief Judge Wachtler.
 This appeal requires us to decide whether the People may be excused from their failure to comply with the statutory requirement that they notify defendant, within 15 days of her arraignment, of their intention to offer at trial evidence of a statement made by her to a police officer (see, CPL 710.30). We hold that the People did not establish good cause for the delay and that, therefore, it was error to permit them to serve a late notice and to admit such evidence at defendant’s trial. Lack of prejudice to the defendant resulting from the delay does not obviate the need for the People to meet the statutory requirement of good cause before they may be permitted to serve a late notice.
Defendant was convicted, after a jury trial, of robbery in the *482 first degree, based on charges that, in the predawn hours of July 1, 1982, she and a male accomplice robbed at gunpoint a cab driver named Balram Jageswar. According to Jageswar, the pair hailed his cab in Manhattan and, when he stopped to let them off in Queens, the male held a gun to his head while defendant took his watch, wallet and $120 in cash, and handcuffed him. The assailants then drove off in the cab, leaving their victim behind. Jageswar found his way to a phone booth to summon the police, who came to his aid and transported him to the 105th Precinct in Queens. There, he recounted the events and gave the police a description of the robbers. The case was assigned to Detective Kelly of the Queens Robbery Squad.
On August 12, 1982, defendant and Alfredo Perez were arrested in Queens by Police Officer Nash in connection with a separate but similar crime, for which they were eventually indicted. In response to questioning by Nash at that time about other incidents in the area, defendant made several inculpatory statements, including the one at issue on this appeal: "I was with him [Perez] on the Balram Jageswar robbery. He deserved it because he took us into Nassau County.” Nash made a note of the statement but he did not convey the information to those investigating the Jageswar robbery.
Detective Kelly learned, however, that a male and female had been arrested by Nash for a crime similar to the Jageswar robbery and he obtained the arrest photos of the pair for use in his investigation. On September 8, 1982, Jageswar picked defendant’s photo from an array displayed to him by Kelly. Defendant was arrested on September 24, indicted for the Jageswar robbery on October 18, and arraigned on the indictment on November 3, 1982. Neither Kelly nor the Assistant District Attorney assigned to the case yet knew of defendant’s statement to Nash.
It was not until April 5, 1983, five months after defendant’s arraignment, that Nash notified Kelly and the ADA of defendant’s statement implicating herself in the Jageswar robbery. Shortly thereafter, the People moved for permission to serve a late notice of their intention to use the statement, asserting that they had good cause for their failure to notify defendant within 15 days of arraignment (see, CPL 710.30 [2]). Defendant cross-moved for an order precluding the use of the statement (see, CPL 710.30 [3]).
*483 Supreme Court held a hearing on the motion and at the same time, over defendant’s objection, held a Huntley hearing (see, People v Huntley, 15 NY2d 72) to determine if the statement was made voluntarily. The court found the facts to be essentially as stated above and ruled that the People had established good cause for their failure to notify defendant within the statutory time period. Accordingly, the court denied defendant’s motion to preclude the use of the statement, granted the People’s motion for permission to serve a late notice and ruled that the statement was admissible. The statement was subsequently used at defendant’s trial and she was convicted of the Jageswar robbery.
The Appellate Division affirmed the conviction without addressing whether the People had established good cause, reasoning that, because defendant received notice far enough in advance of trial to prepare a defense, the purpose of the notice requirement had been satisfied (121 AD2d 570). Defendant was granted permission to appeal by a Judge of this court.
I
CPL 710.30 requires that the People serve upon a defendant, within 15 days after arraignment, notice of their intention to offer at trial evidence of statements made by the defendant to public servants. The court may permit the People to serve a late notice, however, "[f]or good cause shown” (CPL 710.30 [2]). In the absence of a timely notice or a late notice as permitted by the court, the evidence may not be received against the defendant at trial, unless the defendant has nevertheless made an unsuccessful suppression motion directed at such evidence (CPL 710.30 [3]).
The People argue in support of an affirmance that the lack of communication between Officer Nash and the Assistant District Attorney is a sufficient excuse under the statute for their noncompliance and that, accordingly, Supreme Court properly allowed them to serve a late notice. In the alternative, they ask us to adopt the reasoning of the Appellate Division that the goal of CPL 710.30 is simply to allow a defendant adequate opportunity to prepare a challenge to the voluntariness of the statement and consequently, if the prosecution’s noncompliance does not compromise that objective— that is, if the defendant is not prejudiced by the delay in receiving notice — then the People should not be precluded *484 from using the statement, notwithstanding their lack of "good cause.” Finally, the People contend that, if it was error to allow the statement to be used at trial, such error was harmless.
Defendant, on the other hand, urges that the excuse proffered by the People is indistinguishable in principle from the one advanced by the People and rejected by this court in People v Spruill 47 NY2d 869). Defendant further argues that good cause is, under the plain terms of the statute, an indispensable requirement, without which permission to file a late notice may not be granted. She asks us to reject the "no prejudice” rule applied by the Appellate Division. Accordingly, she contends that it was error to permit the People to use the statement at trial and that such error was not harmless.
For the reasons that follow, we agree with the defendant’s contentions. The order of the Appellate Division should be reversed and a new trial ordered.
II
CPL 710.30, insofar as it concerns confessions or admissions by a defendant, finds its origins in Jackson v Denno (378 US 368), in which the United States Supreme Court held that such statements may not be considered by the jury which is to adjudicate guilt or innocence unless there has first been a determination by a separate fact finder, following an evidentiary hearing, that such statements were made voluntarily. To effectuate that decision, this court set forth tentative procedures to govern such hearings in this State, "pending further development by the courts or by the Legislature, or both” (People v Huntley, 15 NY2d 72, 74, supra). Among other procedures, we required that "[t]he prosecutor must, within a reasonable time before trial, notify the defense as to whether any alleged confession or admission will be offered in evidence at trial. If such notice be given by the People the defense, if it intends to attack the confession or admission as involuntary, must, in turn, notify the prosecutor of a desire of a preliminary hearing on such issue” (id,., at 78).
The Legislature soon codified and refined the procedures we outlined in Huntley by adding title II-C to part 6 of the Code of Criminal Procedure (L 1965, ch 846, § 1). The notice requirement was found in section 813-f of the code, which required written notice "within a reasonable time before the commencement of the trial”. The statute contained no explicit *485 sanction for noncompliance, but it was held that failure to provide the required notice deprived the People of the evidentiary use of the defendant’s statement (see, People v Schwartz, 30 AD2d 385, 388).
This exclusionary sanction was given the endorsement of the Legislature when the Code of Criminal Procedure was replaced by the Criminal Procedure Law in 1971 (L 1970, ch 996, § 1). Thus, subdivision (3) of CPL 710.30 provided that evidence subject to the notice requirement could not be received against the defendant at trial if pretrial notice had not been given. Subdivision (2), however gave the People an opportunity to avert that consequence by providing that, "[f]or good cause shown * * * the court may permit the people to serve such notice during trial, and in such case it must accord the defendant reasonable opportunity to make a suppression motion during trial”.
It was this version of CPL 710.30 that we addressed in People v Briggs (38 NY2d 319) and People v Spruill (47 NY2d 869, supra), both of which involved attempts by the prosecution to serve notice during trial. In Briggs, the only excuse offered by the prosecutor for the failure to serve the notice before trial, as the statute then required, was a "lack of continuity” in the prosecutor’s office; the trial prosecutor apparently did not know whether the notice had been served by his office. The trial court permitted the People to serve a late notice and, after a hearing on the voluntariness, admitted statements made by the defendant to a New York City detective. We vacated the resulting conviction and ordered a new trial, holding that "[l]ack of continuity or other office failure does not constitute the 'unusual circumstances’ contemplated by the statute” (People v Briggs, supra, at 324).
In People v Spruill, the excuse offered for failure to give pretrial notice was that the police officer to whom the statement was made had not informed the prosecutor of the confession prior to trial. We held that this excuse was inadequate, finding it no different in principle from the excuse we rejected in Briggs, and noting that knowledge on the part of the police department must be imputed to the District Attorney’s office (People v Spruill, supra, at 870-871).
Ill
We agree with defendant that the People’s excuse should fare no better in this case, where the police officer who had *486 knowledge of the statement did not inform the prosecutor in time to comply with the requirements of the statute. The People seek to distinguish Spruill on the ground that the statement in this case was made to Officer Nash, who was investigating a separate crime. In Spruill, they point out, the statement was made to the officer who arrested the defendant for the crime for which he was on trial when the statement was offered. Therefore, the People contend, the relationship between Officer Nash and the prosecutor assigned to the Jageswar robbery was more distant than the relationship between the arresting officer and the prosecutor in Spruill. The People argue that, for this reason, it is unrealistic to impute the knowledge of Nash to the prosecutor in this case.
There may be instances where, given the time, place and context of the defendant’s statement to a police officer and an attenuated connection between that officer and the prosecutor, the untimely disclosure of the statement to the prosecutor would present the "unusual circumstances” to which the good cause requirement is addressed. There are no such circumstances here.
Officer Nash’s own testimony at the hearing on the People’s motion discloses that he was in frequent contact with Detective Kelly and with the prosecutor assigned to the Jageswar case, who was also assigned to the case arising out of Nash’s arrest of defendant. Indeed, Nash spoke to someone from the District Attorney’s office immediately after he interviewed defendant, but disclosed only those statements that he thought were pertinent to his own arrest. He was aware that Detective Kelly later arrested defendant on similar charges and, although he denied knowledge that Kelly’s arrest was for the Jageswar incident, it is clear from the testimony at the hearing and from Nash’s questioning of defendant that the police and the prosecutor’s office viewed the series of taxicab robberies as related. Under these circumstances, the prosecutor’s ignorance of defendant’s statement to Nash cannot be excused because of a supposed attenuated relationship with Nash. Rather, it is, as in Spruill, the result of an " 'inadequacy of internal communication within the law enforcement establishment’ ”, an insufficient basis for delay in giving the defendant notice (People v Spruill, 47 NY2d 869, 871, supra, quoting People v McLaurin, 38 NY2d 123, 126).
The People argue nonetheless that the delay should be excused because it resulted in no harm to the defendant. They *487 point out that, unlike in Briggs and Spruill, where notice was given at trial, in this case notice was given far in advance of trial. Thus, they contend, the purpose of the statute, which they identify as "giv[ing] a defendant adequate time to prepare his case for questioning the voluntariness of a confession or an admission” (People v Briggs, supra, at 322-323), has not been frustrated because the defendant was not prejudiced by the delay. This position finds support in a number of decisions in the lower courts, especially after the 1976 amendment to CPL 710.30, which accelerated the time for serving notice from "before trial” to "within fifteen days after arraignment” (L 1976, ch 194, § 3). These decisions (see, e.g., People v Swan-ton, 107 AD2d 829; People v Taylor, 102 AD2d 944, affd on other grounds 65 NY2d 1; People v Brown, 83 AD2d 699; People v Anderson, 80 AD2d 33) evince an understandable reluctance to deprive the People of useful evidence for failure to comply with a stringent statutory requirement, especially where defendant is not harmed by the omission. Although we fully understand the sentiment, we believe that these decisions conflict with the plain language of the statute, which reflects a legislative policy determination with which the courts may not interfere.
The language which triggers the People’s opportunity to serve a late notice — "[f]or good cause shown * * * the court may permit the people to serve such notice” — was unaffected by the 1976 amendment and thus remains an "unqualified] command” that the court may permit service of an untimely notice "only upon a showing of good cause” (People v Briggs, supra, at 323). Such a showing is, therefore, indispensable. Only if that threshold is crossed may the court move on to considerations of prejudice to the defendant, and only then because the existence of prejudice may preclude granting the relief sought by the People, notwithstanding their showing of good cause (see, People v Briggs, supra, at 323; see also, People v Wright, 127 Misc 2d 885, 892; cf., People v Basilicato, 64 NY2d 103, 117 [construing CPL 700.70]).
That the People have only 15 days after arraignment to comply does not change the plain meaning of the statutory language. In fact, retention of the good cause requirement in the face of the 1976 amendment reinforces our conclusion that lack of prejudice to the defendant is not a substitute for a demonstration of good cause. Under normal circumstances, the defendant could easily be given an adequate opportunity to challenge the voluntariness of the statement at any time *488 before trial. Thus, acceptance of the argument advanced by the People would require that permission to serve late notices be granted routinely. Such an approach would effectively abrogate the 15-day requirement and invite a return to the practice of giving notice at a much later date, even on the eve of trial. Such a result was not the Legislature’s intention.
Nor does the accelerated notice requirement contained in the 1976 amendment demand a relaxation of the standard for evaluating claims of good cause that we developed in Briggs and Spruill. The 15-day rule was approved only five months after our decision in Briggs, but there is no hint of disapproval in the amendment or the relevant legislative history. More importantly, however, we believe that the goals of the statute would not be well served by the dilution or disregard of the good cause requirement.
Although CPL 710.30 retains as its central purpose that of providing a defendant with the opportunity to obtain a pretrial ruling on the admissibility of statements to be used against him, the 1976 amendment was designed to serve an ancillary goal — the orderly, swift and efficient determination of pretrial motions. The impetus for the amendment was the enactment of article 255 of the Criminal Procedure Law (L 1974, ch 763, § 1), the omnibus pretrial motion provisions which sought to impose order and speed on pretrial motion practice by requiring the defendant to make substantially all pretrial motions at one time, on one set of papers before one Judge, within 45 days after arraignment (see, CPL 255.20; Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 255.10, at 437-438). Until the 1976 amendment, however, these goals were compromised by the prosecutor’s ability under CPL 710.30 to serve a notice on defendant at any time before trial, which triggered the defendant’s right to make an additional pretrial motion, requiring a hearing and resulting in additional delay. It was to alleviate this problem that the 1976 amendments to CPL 710.30, requiring notice to defendant within 15 days after arraignment, along with conforming changes to CPL 255.20 and CPL 700.70, were proposed (see, 21st Ann Report of NY Jud Conf, 4th Ann Report by Advisory Committee on CPL, at 339-340, 348-349 [1976]).
Thus, not only considerations of fairness to the defendant, but also concerns for the efficient conduct of criminal prosecur tions underlie the Legislature’s directive. The exclusionary *489 sanction for failure to comply contained in CPL 710.30 (3) reflects a judgment that the loss of the use of the evidence is an acceptable price to pay to achieve the desired goals. Although the People complain that the price is too high and the requirements of the statute burdensome, we cannot dilute or disregard the requirements in an effort to avoid exacting the price without trespassing on the Legislature’s domain and undermining the purposes of the statute.
Thus, we hold that the People, having failed to establish good cause for their noncompliance with the 15-day notice requirement, should not have been permitted to serve a late notice. Accordingly, it was error to admit evidence of the statement at trial.
We also agree with defendant that the error was not harmless. Aside from defendant’s statement, the only evidence connecting her with the crime was the victim’s identification, which was weakened by evidence that he initially described his female assailant to the police as an Hispanic, five-feet, four-inches tall, with a medium complexion and a Puerto Rican accent. According to Detective Kelly’s arrest report, however, defendant was five-feet, seven-inches tall, light-skinned, of Irish descent, and spoke with no accent. Given the apparent weakness of the victim’s identification, the erroneous admission of defendant’s statement that she participated in the crime for which she was on trial cannot be deemed harmless.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.