OPINION OF THE COURT
Simons, J.
Defendant has been convicted after trial of robbery in the first and second degrees. An earlier prosecution of the charges ended in a mistrial when the jury was unable to agree and this circumstance gives rise to two issues presented on the appeal. First, defendant contends that his conviction must be reversed and a new trial ordered because the People elicited testimony from the victim that he had identified defendant as the robber at the first trial and also because the People had failed to comply with the notice requirements of CPL 710.30. Second, defendant assigns error to the introduction of his postarrest statements after the prosecutor had stated prior to the first trial that she would not use them. In a third, unrelated point, defendant contends that the matter must be remitted to the Appellate Division for reconsideration because it refused to accept his pro se brief. We conclude there was no reversible error and that defendant had no right, constitutional or otherwise, to file a supplemental pro se brief on appeal when represented by counsel who argued nonfrivolous issues on his behalf.
I
On March 5, 1981 defendant and another robbed 63-year-old *472 Edgar Berry in the vestibule of Berry’s Manhattan apartment building. The victim knew defendant because he had often noticed him "hanging around” the building before the robbery. He observed defendant during the robbery under good lighting conditions and subsequently identified him to the police. Defendant was arrested four days later at an apartment in the building. Upon his arrest, he protested his innocence, claiming that Berry, the "old man,” was "crazy” and that "two other guys” robbed Berry while defendant and his brother were present.
Defendant and his brother, Miles, were indicted for robbery in the first and second degrees. After the People served a timely notice pursuant to CPL 710.30 of their intention to use his postarrest statements at trial, defendant moved to suppress them, contending that the statements were obtained in violation of Miranda v Arizona (384 US 436). The People consented to a Huntley hearing, but opposed defendant’s suppression motion on the merits. The case was then delayed for approximately nine months to resolve various defense motions. At the conclusion of a hearing on defendant’s speedy trial motion, the Justice presiding sent the case to a trial part for a Huntley hearing and for trial. At that point, the assistant prosecutor stated that it would be only for trial because the People would not use defendant’s statements. The trial started two days later and ended when the jury failed to reach a verdict.
In September 1982, the People announced ready for the second trial. Due to delays not attributable to them, however, the case was repeatedly adjourned. In July 1984, the People announced their intention to use defendant’s statements at the second trial. Defense counsel objected and moved to preclude the evidence. Following extensive colloquy the motion for preclusion was denied and the court held a Huntley hearing to resolve defendant’s motion to suppress. It found that defendant’s statements were voluntary and spontaneous and could be introduced on the People’s case-in-chief. The second trial commenced on October 10. Berry testified that defendant accosted him in the vestibule displaying a handgun, ordered him to freeze and that defendant and his brother then robbed him of two diamond rings. He also testified, over objection, that he had identified defendant as the robber at defendant’s first trial. The arresting police officer, Robert Shack, testified that after Berry told him that defendant robbed him, he arrested defendant and informed him of his *473 Miranda rights. Shack said defendant then admitted being at the scene during a robbery committed by "two other guys”, Butch and Buzzy, but denied participating in it. Defendant rested without presenting any evidence and the jury convicted him of robbery in the first and second degrees. The Appellate Division affirmed, without opinion.
II
Defendant contends first that it was reversible error for the trial court to permit Berry to testify that he identified defendant as the robber at defendant’s first trial. As a substantive matter, prior identification evidence is admissible on the People’s case-in-chief, notwithstanding its bolstering effect on the witness’s in-court testimony (CPL 60.30). Defendant claims, however, that procedural error occurred because the People did not provide him with notice before the second trial that they were going to introduce Berry’s prior identification testimony.
CPL 710.30 requires that within 15 days of a defendant’s arraignment the prosecutor must serve notice of the intention to offer at trial any "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such”. An exception to the 15-day requirement is authorized provided the People establish good cause for the late service of the notice. The issue presented is whether the requirements of CPL 710.30 apply to judicially supervised identifications which occur when defendant is represented by counsel. Relying on the literal language of the statute and a line of cases in the Second Department, defendant claims that it does (see, People v Mole, 147 AD2d 714; People v Magazine, 106 AD2d 473; People v James, 100 AD2d 552; People v Cruz, 88 AD2d 621; but see, People v Jones, 99 AD2d 471). We disagree.
The controlling principle in interpreting statutes is the legislative intent (Ferres v City of New Rochelle, 68 NY2d 446, 451; Matter of Albano v Kirby, 36 NY2d 526, 529-530; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38). Obviously, evidence of it is first sought in the words the Legislature has used (Sega v State of New York, 60 NY2d 183, 191; Riegert Apts. Corp. v Planning Bd., 57 NY2d 206, 209; People v Graham, 55 NY2d 144, 151). But we may not stop there; the spirit and purpose of the act and the objects to be accom *474 plished must also be considered (New York State Bankers Assn. v Albright, 38 NY2d 430, 436; Ferres v City of New Rochelle, supra, at 446; Uniformed Firefighters Assn. v Beckman, 52 NY2d 463, 471).[1] Although a literal interpretation of the language of CPL 710.30 might suggest that an in-court identification at a Wade hearing or a previous trial constitutes a "previous identification”, and thus should be covered by its provisions, there is no suggestion in the legislative history or in the background surrounding the statute that it was intended to cover previous in-court identifications.
Historically, CPL 710.30 "was * * * .a legislative response to the problem of suggestive and misleading pretrial identification procedures treated by the Supreme Court in Gilbert v California (388 US 263), United States v Wade (388 US 218) and Stovall v Denno (388 US 293)”. (People v Gissendanner, 48 NY2d 543, 552.) In each of those cases, the court was concerned with trial identifications predicated on earlier confrontations between an uncounselled defendant and an eyewitness involving lineups, showups or photographs for the purpose of establishing the identity of the criminal actor. CPL 710.30 sets forth a procedure to provide notice to a defendant who might otherwise be unaware that the People are in possession of such evidence and thus allows the defendant to test the reliability of the identification before trial.
However, at a prior in-court identification, a Wade hearing, preliminary felony hearing or previous trial, for example, defendant knows of the identification and the notice purpose of the statute is not implicated. More importantly, defense counsel is present and has the ability to challenge the suggestive nature of the identification at the time it is taking place. Thus, it is of no moment that courts have recognized that in-court identifications may be prompted by suggestive procedures (see, People v James, 100 AD2d 552, 553, supra; People v Banks, 73 AD2d 907, affd 53 NY2d 819; People v Huggler, 50 AD2d 471, 474; Boyd v Henderson, 555 F2d 56, 59-60, cert denied 434 US 927). The critical point is that there is no need *475 for a separate hearing to enable defense counsel to make an argument that more appropriately should be made at the time the problem arises (see, e.g., People v Powell, 67 NY2d 661, 662). Defendant was represented by counsel at his first trial and counsel did not object to Berry’s identification of defendant or suggest that it should be precluded as unnecessarily suggestive. Indeed, he does not now claim that the identification was unfair in any respect.
Finally, defendant’s interpretation of the notice provision would undermine the goal of efficiency found in that statute (see, People v O’Doherty, 70 NY2d 479, 487-488). Under defendant’s interpretation of the statute, a witness’s identification testimony during a prior trial or prior Wade hearing gives rise to an obligation to provide notice and a corresponding right to a suppression hearing. Under the recent amendment to CPL 710.60 (3) (b), however, the defense is relieved of the burden of alleging a factual basis when making a motion to suppress a prior identification (L 1986, ch 776). Thus, every identification at a Wade hearing, for example, could give rise to an additional obligation to send a CPL 710.30 notice resulting in sequential hearings ad infinitum testing the identification rendered at each prior proceeding. Accordingly, the identification testimony was properly received at defendant’s second trial.
Ill
Defendant also contends that the court erred in permitting the People to introduce defendant’s postarrest statements at his second trial. His argument proceeds in two stages. First, he contends that the assistant prosecutor’s statement prior to the first trial that "the People won’t introduce the statement” constituted a stipulation under CPL 710.60 (2) (b) and, therefore, the evidence should have been suppressed. Alternatively, defendant argues that assuming the prosecutor’s statement did not constitute a stipulation, it constituted a withdrawal of the CPL 710.30 notice and notice was not re-served in a timely fashion before his second trial.
We agree with defendant’s contention that it was error to admit the statements but find the error to be harmless beyond a reasonable doubt.
The statute provides that the court must summarily grant a motion to suppress if "[t]he people stipulate that the evidence * * * will not be offered in evidence in any criminal *476 action or proceeding against defendant” (CPL 710.60 [2] [b] [emphasis added]). The Criminal Procedure Law does not define the term "stipulation” and no authority has been cited interpreting that term as used in the statute. We accept the definition, recently stated by one court, that a stipulation is " '[a]n agreement, admission, or concession made in a judicial proceeding by the parties thereto or their attorneys, in respect of some matter incident to the proceeding, for the purpose, ordinarily, of avoiding delay, trouble and expense’ ” (see, People v Hills, 140 AD2d 71, 77, quoting Ballantine’s Law Dictionary 1217 [3d ed 1969]). Applying this definition to the facts here, we conclude that the prosecutor’s statement, verified by the record, constituted a stipulation within the meaning of CPL 710.60 (2) (b) obviating the need for defendant to pursue a suppression hearing. Defendant was not required to make a formal motion to suppress the evidence; his acceptance of the stipulation and the statutory benefit may be inferred as a matter of law, preventing the People from subsequently changing course and using defendant’s statements after the passage of time may have made evidence unavailable or witness’s memories less reliable.
Despite our conclusion that the trial court erred in refusing to preclude defendant’s statements, we hold that the error was harmless beyond a reasonable doubt. First, the statements were basically exculpatory. Defendant denied involvement in the robbery and claimed "two other guys” were responsible. Although he admitted in the statements being present during the robbery, the victim’s testimony on this point was strong and uncontradicted (see, People v Jackson, 70 NY2d 884, 885). He knew defendant, testifying that in the weeks preceding the robbery he had seen defendant "all the time” in the apartment building where he and defendant lived, and he had ample time before, during and after the robbery to view the defendant at close range. Moreover, defendant did not deny that he was at the scene during the robbery. Indeed, at his first trial, defendant’s own witness, "Buzzy”, confirmed that he and defendant had been in the vestibule.
In arguing against a harmless error analysis, defendant claims the admission of the statements seriously prejudiced his case because they pictured him as an angry man who referred to Berry as the "old man” and called him "crazy” and "a lunatic”. The statements do not necessarily reflect a consciousness of guilt, however; they also may be viewed as *477 the reaction of a person upset about being wrongly accused of a crime. It is clear that the jury, which acquitted defendant’s brother, credited Berry’s testimony, not because it was confirmed by defendant’s admissions, but because there was no reasonable possibility that Berry identified the wrong person (see, People v Brown, 140 AD2d 266, 270, lv denied 72 NY2d 955).
Accordingly, we find no trial error warranting reversal of the conviction.
IV
Finally, defendant claims that the order of affirmance must be reversed and the case remanded to the Appellate Division because that court refused to grant his application for permission to file a supplemental pro se brief. By attempting to file a supplemental brief, defendant sought to act as his own cocounsel or, otherwise stated, assert the right to hybrid representation. We have previously held that a defendant has no State or Federal constitutional right to such representation at the pretrial and trial levels (People v Garcia, 69 NY2d 903, 904; People v Ferguson, 67 NY2d 383, 390; People v Mirenda, 57 NY2d 261, 265-267; People v Richardson, 4 NY2d 224) but defendant contends that we recognized such a right on appeal in People v Vasquez (70 NY2d 1).
In Vasquez, we held that a defendant was denied effective assistance of counsel when his attorney wrote a brief disparaging several arguments his client sought to raise, thereby effectively precluding the client from successfully presenting these arguments pro se. We stated that counsel who adopts and submits nonfrivolous appellate issues on behalf of the defendant but refuses to raise other issues requested, should explain to the client why the other issues should not be submitted and advise the client that, if he or she wishes, permission may be sought to file a supplemental brief with the appellate court. Our discussion in Vasquez addressed the ethical obligation counsel owes a client; we did not create any right on behalf of indigent defendants to act as cocounsel on appeal when represented by counsel presenting nonfrivolous issues.[2] Thus, defendant’s claim is a novel one in this court, not controlled by Vasquez.
*478 Defendant contends that the principal danger of multiple representation is jury confusion (see, People v Richardson, 4 NY2d 224, supra) and that this danger is not present at the appellate level where trained Judges rather than lay jurors are the decision makers. This argument, however, overlooks our decisions in People v Garcia (69 NY2d 903, supra) and People v Ferguson (67 NY2d 383, supra). In neither case was there a jury present nor the need to avoid confusion. Nevertheless, we held that defendant had no right to act as cocounsel with the assigned attorney.
Defendant’s alternative attack is more substantial. He notes first that an indigent defendant does not have the right to assigned counsel of choice and must be content with the counsel appointed by the State absent an affirmative showing of good cause (see, People v Sawyer, 57 NY2d 12, 18-19; People v Medina, 44 NY2d 199, 208; People v Brabson, 9 NY2d 173, 180-181). Second, he observes that it is the prerogative of counsel, not the client, to decide what issues should be raised on appeal. A defendant having accepted the assistance of counsel, retains authority only over certain fundamental decisions regarding the case (i.e., whether to plead guilty, waive a jury trial, testify in his or her own behalf or take an appeal; Jones v Barnes, 463 US 745, 751; People v Ferguson, 67 NY2d 383, 390, supra) and an attorney is not necessarily guilty of ineffective assistance for failing to argue issues the client requests, even if hindsight shows that one of these issues would have been meritorious on appeal. Indeed, it is generally accepted that counsel for defendant should "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible, or at most on a few key issues” (Jones v Barnes, supra, at 751-752).
Defendant claims, however, that those who can retain attorneys of their choice are able to convince counsel to raise all nonfrivolous arguments that they wish presented. From all this, he reaches the conclusion that unless the Appellate Division accepts pro se supplemental briefs filed by indigent defendants, the result will be that counsel’s decision not to *479 raise all nonfrivolous issues will bar defendants from obtaining a complete review of the merits of their appeals, denying them both effective assistance of counsel and equal protection of the law.
The false premise in defendant’s argument is that retained lawyers necessarily submit every nonfrivolous issue requested by the client, or that the client has a right to have such issue submitted. Nothing required by the State or Federal Constitution requires the attorney to do so (cf., ABA Standards for Criminal Justice, Criminal Appeals, standard 21-3.2, comment, at 21-42 [2d ed 1980]). Indeed, good appellate practice might require a retained attorney to take a different approach from that urged by the client when experience has proven that the attorney’s approach is in the client’s best interest. Thus, we see no reason why the rule that defendant has no right to hybrid representation at the pretrial and trial stages should not carry over to the appellate stage.[3]
Finally, defendant argues that even if there is no State or Federal constitutional right to file a supplemental pro se brief, such a right should be granted as a matter of public policy. Secondly, he argues, acceptance of pro se submissions fosters the belief that at least defendant has been heard. Although it appears that some of the departments of the Appellate Division accept pro se briefs as a matter of course, as do we, apparently some do not. The routine denial of applications to file pro se briefs could support a claim that a court is acting arbitrarily and the failure to accept such a brief in a given case could constitute an abuse of discretion. Accordingly, we believe the better practice would be for appellate courts to accept timely supplemental pro se briefs. The decision, however, lies within the sound discretion of the court (cf., People v Mirenda, 57 NY2d 261, 265, supra). The record before us discloses no facts or circumstances suggesting that denial of defendant’s application constituted an abuse of discretion as a matter of law.
*480 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. Indeed our past decisions have avoided an interpretation of CPL 710.30 that places too much emphasis on the statute’s literal language when doing so would produce results plainly at odds with the policy of the legislation as a whole (see, People v Tas, 51 NY2d 915, 916 [since participants in the incident were known to each other, there was no identification within the meaning of CPL 710.30 and no prior notice need be given by the People]; see also, People v Collins, 60 NY2d 214, 218-219; People v Berkowitz, 50 NY2d 333, 338, n 1; People v Gissendanner, 48 NY2d 543, 552).

. We did not address in Vasquez, nor do we today, the question of whether the appellate court, handling defendant’s single appeal as of right, must accept defendant’s supplemental submission when defense counsel *478 simply files an Anders brief (see, Anders v California, 386 US 738) asking to withdraw as counsel and stating that there are no nonfrivolous issues to be raised on appeal. We note, however, that there is no hybrid representation problem in a true Anders situation because, upon filing an Anders brief, refusing to argue any issues for defendant, counsel ceases to be an advocate for defendant’s cause, and operates only as an officer of the court (see, id., at 744).

. The other jurisdictions that have addressed the issue are in accord (see, e.g., Whitfield v State, 517 So 2d 23, review denied 525 So 2d 881 [Fla App]; Callahan v State, 30 Md App 628, 354 A2d 191; Commonwealth v Kibler, 294 Pa Super 30, 439 A2d 734; Mendizabal v State, 732 SW2d 417 [Tex App]). Moreover, denying criminal defendants the right to file supplemental pro se briefs does not deprive them of a right to present a claim of ineffective assistance of trial counsel in a CPL article 440 proceeding (People v Rivera, 71 NY2d 705, 709) or showing, in a writ of error coram nobis brought in the Appellate Division (see, People v Bachert, 69 NY2d 593), ineffective assistance of appellate counsel.