OPINION OF THE COURT
Michael R. Juviler, J.
This is a written version of an oral decision after a hearing on a motion to preclude identifications on the ground of late notice, and a Wade hearing. The main issue is whether CPL 710.30 (2), which requires the People to serve their notice of identifications on the defendant within 15 days of arraignment, applies to identifications that were obtained after arraignment, but before the 15-day time limit had elapsed, and whether notice of such identifications could timely be provided two months after arraignment, in response to the defendant’s omnibus motion. For the reasons to be stated here, I find that the statute does not apply and that notice was timely.
THE facts
On the morning of May 15, 1992, two men dressed in Hasidic clothing and wearing false beards attempted an armed robbery at a law office on 11th Avenue near 46th Street in Brooklyn.
Just before the crime, a bystander, now called "confidential witness number 4”, saw a man, alleged to be the defendant, at the corner of 11th Avenue and 46th Street, dressed "like a Jewish person.” The man was putting on a beard and black gloves. Another bearded man, dressed the same way, joined him.
Shortly thereafter, Anthony Capozzi, a lawyer who worked at the law office, was walking down 11th Avenue to the office when he saw a man, alleged to be the defendant, wearing Hasidic clothing, gloves, and a fake beard. Capozzi turned quickly into his office, but the man pushed his way in, fired a shot, announced a holdup, and ordered everyone to lie down on the floor. While Capozzi lay face down, a second man came in. One of the men demanded, "Where’s the money?” but the other warned, "There’s going to be cops!” The two would-be robbers then left the office without any money and ran toward 46th Street.
At this point, "confidential witness number 1” was on 46th Street, around the corner from the law office, when he saw two men dressed in "Jewish clothing” running toward him *895 from 11th Avenue. Both men turned and fired handguns at police officers. The gunman said to be this defendant interrupted his shooting to flee in a car, while the codefendant, Dino Caroselli, remained in the street shooting at the officers. Caroselli was wounded in the shoot-out and was arrested. Witnesses numbers 1 and 4 spoke to detectives at the scene,[2] including Detective Maria Córtese, who headed the investigation.
Two and a half hours later, after a manhunt, the defendant was arrested five blocks away. Capozzi identified him there at a showup.[3]
Within a few days, the District Attorney presented the case to the Grand Jury, aided by Detective Córtese. On May 20, 1992, the Grand Jury voted to indict the defendant and Caroselli for attempted robbery in the first degree and two counts of attempted murder in the first degree (concerning the two police officers).
On that day, Detective Córtese prepared a photographic array of this defendant and five fillers to show to witnesses numbers 1 and 4. The array is very fair, and there has been no claim after the Wade hearing that its appearance or the detective’s subsequent conversations with the witnesses were suggestive. On May 21, the indictment was filed. This defendant was arraigned on June 9.
As of June 9, Detective Córtese had not yet shown the photo array to witness number 1 or witness number 4; she had been busy with another case. After searching for both witnesses she found witness number 4 on June 11, at an apartment near the crime scene. Witness number 4 looked at the array, pointed to this defendant’s picture, and said, "This looks like the man who was preparing himself on the corner.” As Detective Córtese left the apartment building, she encountered witness number 1. He also viewed the array and picked out the defendant.
Detective Córtese prepared a DD-5 report about these photographic identifications. She did not tell anyone in the District Attorney’s office about them, because (as she explained at the *896 hearing) she "did not know there was a problem in showing the array.” She then worked on other cases and went on vacation.
On June 30, the case appeared in court for the first time after the arraignments. The court scheduled omnibus motions to be served by July 27 and an answer to be filed by the next court date, August 25. The case was adjourned to August 25 for decisions on the motions.
The defense served its omnibus motion on time. In order to prepare an answer, the prosecutor met with Detective Córtese on July 31 and reviewed her DD-5’s. For the first time the prosecutor learned of the photographic identifications of June 11. On August 7, the prosecutor mailed to defense counsel an amended notice of identification evidence, reporting the two photographic identifications. It arrived three days later, 62 days after the arraignment.
Upon receipt of this notice, the defendant moved to preclude identification evidence by witnesses numbers 1 and 4. The motion was returnable on the next scheduled court date, August 25. On that date, the court ordered a hearing on the motion to preclude and, to save time, combined it with a Wade hearing on those identifications and the showup identification by Anthony Capozzi. (Under the circumstances, the ordering of a Wade hearing did not bar the motion to preclude. See, CPL 710.30 [3]; People v Bernier, 73 NY2d 1006, 1008.)
ON PRECLUSION — THE 15-DAY DEADLINE FOR NOTICE
The motion to preclude is governed by CPL 710.30. Subdivision (1) provides: "Whenever the people intend to offer at a trial * * * (b) testimony regarding an observation of the defendant * * * at the time or place * * * of the offense * * * to be given by a witness who has previously identified him * * * they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.”
The parties agree that this requirement of notice applies to the photographic identifications by witnesses numbers 1 and 4 (see People v Moss, 80 NY2d 857; People v White, 73 NY2d 468, 474, cert denied 493 US 859; People v Miles, 163 AD2d 330), and that the People served notice of those identifications.
The issue between the parties is the timeliness of the notice. That issue is governed by subdivision (2) of section 710.30, which provides: "Such notice must be served within fifteen days after arraignment and before trial, and upon such ser *897 vice the defendant must be accorded reasonable opportunity to move before trial * * * to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.”
If this 15-day limit applies here, it was violated, because no "good cause” has been shown for a later service of notice. Failure of Detective Córtese to tell the District Attorney about the identifications until after the 15-day deadline is not "good cause.” (People v O’Doherty, 70 NY2d 479; People v Pinney, 136 AD2d 573.) "Unusual circumstances” may be good cause and justify late notice. (People v ODoherty, supra, at 486.) The detective’s belief that there was no "problem,” her vacation, and her work on other cases are not unusual circumstances amounting to good cause, particularly since she was the detective in charge of the case and worked closely with the District Attorney on it. (People v ODoherty, supra; People v Riley-James, 168 AD2d 740, 741.) (ODoherty dealt with timeliness of notice of the defendant’s statement to a police officer and the meaning of "good cause” for late notice of the statement. Court decisions relating to notice of a statement apply to notice of an identification because CPL 710.30 [2] applies equally to both kinds of notice. See, CPL 710.30 [1] [a].)
If the 15-day limit deadline applies here, the consequences are severe. Subdivision (3) of section 710.30 provides: "In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial.” Violation of the 15-day deadline for notice of a photographic identification requires preclusion of a courtroom identification at trial by the same identifying witness, even if the photographic procedure was not suggestive, there is an independent source for a courtroom identification, and the defense has not been prejudiced by the delay and has had time to move to suppress the identification. (People v Moss, supra; People v Miles, supra; see also, People v Bernier, 73 NY2d 1006, supra; People v McMullin, 70 NY2d 855; People v O'Doherty, 70 NY2d 479, supra; People v Perez, 177 AD2d 657, lv denied 79 NY2d 951.)
The deadline does not apply to identifications that are made after the 15 days, because in such cases notice within 15 days would be impossible. (People v Boswell, 193 AD2d 690; People v Whitaker, 106 AD2d 594.) That simple point does not resolve *898 the issue in this case, where the identifications happened within the 15 days.
The literal language of CPL 710.30 (2) does not contain an exception for evidence obtained after arraignment and within the 15 days. An analysis of the purpose and policy underlying the legislative enactment of section 710.30, however, leads to the conclusion that the 15-day rule does not apply to any postarraignment identifications, not even to those that take place within the 15 days.
That analysis is required by People v White (73 NY2d 468, cert denied 493 US 859, supra). There the Court of Appeals held that despite the "literal language of the statute,” section 710.30 does not require notice of an identification that was made at a previous trial in the same case. (Supra, at 473.) "The controlling principle in interpreting statutes,” said the Court, "is the legislative intent * * * Obviously, evidence of it is first sought in the words the Legislature has used * * * But we may not stop there; the spirit and purpose of the act and the objects to be accomplished must also be considered.” (Supra, at 473-474.) "Indeed,” continued the Court, "our past decisions have avoided an interpretation of CPL 710.30 that places too much emphasis on the statute’s literal language when doing so would produce results plainly at odds with the policy of the legislation as a whole”; the Court cited its decisions holding that section 710.30 does not require notice of police-arranged identifications if the parties "were known to each other.” (Supra, at 474, n 2.)
The Court concluded: "Although a literal interpretation of the language of 710.30 might suggest that an in-court identification at a Wade hearing or a previous trial constitutes a 'previous identification’, and thus should be covered by its provisions, there is no suggestion in the legislative history or in the background surrounding the statute that it was intended to cover previous in-court identifications.” (People v White, supra, at 474; see also, People v Greer, 42 NY2d 170, 178 [purpose of CPL 710.30 (2) (a) notice of intent to use a defendant’s statement is to "afford a defendant adequate time in preparing his case in respect to the voluntariness of a confession or admission * * * Thus * * * the notice of intention to offer evidence need not be served upon the defendant where there is no question of voluntariness”]; People v Padrón, 118 AD2d 599 [despite the literal language of CPL 710.30, the section does not require notice of intent to use the defendant’s Grand Jury testimony].)
*899 This court will therefore turn to the "legislative history” and "background” of the 15-day deadline to determine the "spirit and purpose” of the statute. (See, People v White, supra, at 474; People v Greer, supra, at 178.)[4]
Nothing in the legislative history specifically addresses the question whether the 15-day deadline applies to identifications or statements that are obtained after arraignment and during the next 15 days. (See, 21st Ann Report of NY Jud Conf, 4th Ann Report by Advisory Comm on CPL, at 339-340, 348-349 [1976], Bill Jacket, L 1976, ch 194.) But "there is no suggestion in the legislative history or in the background surrounding the statute that it was intended to cover” such evidence. (Cf., People v White, supra, at 474.) On the contrary, the legislative history, reviewed in O’Doherty (supra), provides convincing evidence that the deadline was not designed to apply to postarraignment identifications or statements.
In its original form when enacted in 1974, CPL 710.30 (2) required that notice be served "before trial,” except that "[f]or good cause shown” the court could permit service "during trial.” By the time of O’Doherty (supra), the section had been amended in 1976 to require the notice "within fifteen days after arraignment and before trial,” except that "[f]or good cause shown” the court may permit service "thereafter.” (L 1976, ch 194, § 3.) In O’Doherty, the Court of Appeals described the purpose of the 1976 change: "Although CPL 710.30 [as enacted in 1974] retains as its central purpose that of providing a defendant with the opportunity to obtain a pretrial ruling on the admissibility of statements to be used against him, the 1976 amendment was designed to serve an ancillary goal — the orderly, swift and efficient determination of pretrial motions. The impetus for the amendment was the enactment of article 255 of the Criminal Procedure Law (L 1974, ch 763, § 1), the omnibus pretrial motion provisions which sought to impose order and speed on pretrial motion *900 practice by requiring the defendant to make substantially all pretrial motions at one time, on one set of papers before one Judge, within 45 days after arraignment * * * Until the 1976 amendment, however, these goals were compromised by the prosecutor’s ability under CPL 710.30 to serve a notice on defendant at any time before trial, which triggered the defendant’s right to make an additional pretrial motion, requiring a hearing and resulting in additional delay. It was to alleviate this problem that the 1976 amendments to CPL 710.30, requiring notice to defendant within 15 days after arraignment, along with conforming changes to CPL 255.20 and CPL 700.70, were proposed.” (70 NY2d, at 488.) The Court found that these "goals” of the "15-day rule” disclosed by this "relevant legislative history * * * would not be well served by the dilution or disregard of the good cause requirement.” (Supra.)
Thus, the 1976 amendment had nothing to do with identifications or statements that are obtained during the first 15 days after arraignment on the indictment. During that period identifications are hardly ever obtained, and statements are rarer still. There has been no "practice” of delay in giving notice of evidence that is obtained during the 15 days; no "problem” of the type perceived in O’Doherty (supra) exists to be "alleviated.”
Clearly, in enacting the 15-day rule the Legislature was addressing evidence that is obtained before the arraignment on the indictment. Indeed, as the Court of Appeals noted in O’Doherty (70 NY2d, at 488, supra), when the Legislature amended CPL 710.30 (2) to add the 15-day rule for identifications and statements, it also amended CPL 700.70 to apply the new deadline to eavesdropping evidence. (L 1976, ch 194, § 2.) Eavesdropping never continues after arraignment, not only because it is useless then, but because by operation of law presumptively it must be terminated upon indictment. (See, CPL 700.10 [2].) And, when it enacted the 15-day rule, the Legislature contemplated that by the time of the arraignment on the indictment the People would have the case essentially prepared and would be ready at arraignment to refer to "the weight of the evidence against” the defendant in stating their position on bail. (Cf., CPL 510.30 [2] [a] [vii].)
Not only are postarraignment identifications and statements rare, but surely they occur no more often during the brief, finite period of 15 days after arraignment than during the indefinite, often prolonged period thereafter, when the 15-day *901 rule does not apply at all. (See, People v Boswell, 193 AD2d 690, supra; People v Whitaker, 106 AD2d 594, supra.) Since the Legislature did not provide any deadline for notice of evidence that is obtained during the long, indeterminate, period that begins 15 days after arraignment, the Legislature hardly could have intended to apply a specific deadline for notice of evidence that is obtained during a much shorter period, the first 15 days after arraignment.
Furthermore, the obtaining of evidence during the 15-day period is not likely to affect the motion schedule. Normally, as in this case, when the evidence is obtained during the first 15 days after arraignment, defense motions have not yet been filed; the defendant cannot be required to file motions until 45 days after arraignment. (CPL 255.20 [1]; Matter of Veloz v Rothwax, 65 NY2d 902.) Notice within a reasonable time — as, in this case, two weeks after service of the omnibus motion and two weeks before the return date of that motion — does not delay the motions, hearings, or trial. As the Court found in O’Doherty (supra), the 15-day rule ensures that an additional pretrial motion with its attendant delay is unnecessary when the defense gets notice of the evidence in time for the defense to include a motion to suppress in the omnibus motion. That purpose was "well served” in this case, where notice was given in time for the defendant to supplement the omnibus motion before the return date. (70 NY2d, at 488.)
Thus, applying the 15-day deadline to postarraignment identifications or statements would add little to "the orderly, swift and efficient determination of pretrial motions” (cf., People v O’Doherty, supra, at 488) or fairness to the defendant. Weighed against that marginal gain is the enormous mandatory sanction of absolute preclusion of evidence when the notice is untimely. Here, that would have required preclusion of two identifications for serious alleged crimes, including A-I felonies, regardless of the absence of any suggestivity in the identification procedures, prejudice to the defendant, or delay in the proceedings. In respect to the prearraignment evidence involved in O’Doherty (supra), the "exclusionary sanction for failure to comply contained in CPL 710.30 (3) reflects a judgment that the loss of the use of the evidence is an acceptable price to pay to achieve the desired goals” of "fairness to the defendant” and "the efficient conduct of criminal prosecutions.” (70 NY2d, at 488-499.) But in the case of postarraignment evidence, the loss would be an arbitrary price to pay for no significant benefit. Such a result would be "plainly at odds *902 with the policy of the legislation as a whole.” (Cf., People v White, supra, 73 NY2d, at 474, n 1.)
If the 15-day time limit for notice does not apply to postarraignment identifications and statements, what is the time limit? The answer is in the normal discovery rules covering the prosecution’s continuing duty to disclose newly discovered evidence "promptly.” (See, CPL 240.60.) If those disclosures are not made within an appropriate time, the court may in its discretion impose sanctions. (CPL 240.70 [1].) The same procedures and requirements apply for evidence obtained after arraignment but within the 15-day period as apply for evidence obtained after the 15 days. No special problem is presented in either case, and the court can readily apply the normal discovery rules. (Cf., People v Whitaker, 106 AD2d 594, supra.)
In this case there was prompt disclosure. As soon as the People discovered the new evidence, they disclosed it in the course of the normal omnibus motion practice, without prejudice to the defendant or delay in the proceedings. Therefore, no sanction of preclusion is warranted.
The motions to preclude and suppress identifications by witnesses numbers 1 and 4 are denied.

. As things turned out, witness number 4 was unavailable to testify at the trial, and at the trial witness number 1 mistakenly identified Caroselli as the driver of the getaway car and the defendant as the man who had been shot in the street.

. The showup identification was suppressed as not "prompt and immediate.” (See, People v Johnson, 81 NY2d 828, 831.)

. In researching the legislative history of the statutory 15-day deadline, I came across a letter that I had written 17 years ago, as counsel to the Office of Court Administration, to the Governor’s Counsel, urging approval of the bill that enacted the 15-day rule. In the letter I expressed no opinion on the issue now before the court. I disclosed the letter, and the rest of the "Legislative Bill Jacket” in which I had found it, to the lawyers on both sides of this case and asked whether either side would prefer me to recuse myself. Because neither party asked for recusal, and because the current issue is one of law upon which I had formed no previous opinion, I remained on the case.