84 N.Y.2d 584 (1994)
644 N.E.2d 1310
620 N.Y.S.2d 754
The People of the State of New York, Respondent,
v.
Ulysses Trammel, Appellant.
Court of Appeals of the State of New York.
Argued October 21, 1994.
Decided December 8, 1994.
Edward J. Nowak, Public Defender of Monroe County, Rochester (James Eckert of counsel), for appellant.
Howard R. Relin, District Attorney of Monroe County, Rochester (Mark W. Pedersen of counsel), for respondent.
Judges SMITH, LEVINE and CIPARICK concur with Judge BELLACOSA; Chief Judge KAYE dissents and votes to reverse in a separate opinion in which Judges SIMONS and TITONE concur.
*586 BELLACOSA, J.
Defendant was convicted, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree. The jury concluded that defendant shot and killed a participant in a street fight. The Appellate Division affirmed and a Judge of this Court granted defendant leave to appeal. The single, dispositive question is whether a trial witness, named Gray, made a "previous[] identifi[cation]" within the pretrial notice requirement of CPL 710.30.
The People notified defendant in timely compliance with CPL 710.30 of their intent to offer testimony at trial from a witness, named Lill, who had previously identified defendant as the shooter. A Wade hearing followed and the People produced evidence with respect to that eyewitness (United States v Wade, 388 US 218). On the day of trial, the People announced their intention to call a new identifying witness, Gray, with respect to whom no CPL 710.30 (1) pretrial notice had been given. Only the latter witness' identification is at issue, and contrary to the contention in the dissenting opinion, there was never, up to that point, any previous identification of defendant by Gray.
Over defendant's objection, the trial court conducted a *587 second Wade hearing, concentrating solely on Gray's potential testimony at trial. A brief colloquy, recorded on the record prior to the hearing, demonstrates that Gray had made no prior identification of defendant. Specifically, the People stated that "[Gray] may be able to pick the person out. He also may not. He doesn't say he knows who Mr. Trammel is. * * * When he is asked in court and if he looks around the room, that's going to be the time whether we know he can pick out Mr. Trammel." Defense counsel also asserted that Gray "indicated he could not identify anyone". At this point, the hearing court stated that "the purpose of our Wade hearing today is * * * to make an in-court identification."
At the second Wade hearing held immediately prior to jury selection, the "unnoticed" witness Gray testified that on the night of the homicide he went to the police station and viewed 79 computerized pictures. When asked if he was able to identify defendant, the witness answered, "[n]ot that night". Two days after the murder, the witness was again asked to try to identify defendant. He testified, "I couldn't make a positive [identification]" and "I didn't want to send an innocent man to jail". On cross-examination by defendant's counsel, the witness confirmed that he "couldn't identify anyone". A police investigator confirmed these assertions which demonstrate that the investigation was unsuccessful in getting Gray to identify defendant. The record therefore confirms that Gray did not make a "previous[] identifi[cation]," the precise and plain triggering predicate for the notification procedure to be operative (CPL 710.30 [1]).
Following the hearing, the court found that "[t]here were no suggestive statements, nor any suggestive actions communicated by the police," and permitted witness Gray to identify defendant at trial. Defendant contends that Gray's identification testimony should have been precluded because of failure of the People to provide a CPL 710.30 notice as to that witness.
CPL 710.30 (1) requires notice of the People's intent to offer "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him [defendant] as such" (emphasis added; People v Newball, 76 N.Y.2d 587, 590; People v White, 73 N.Y.2d 468, 473, cert denied 493 US 859). We conclude that, based on the record in this case, the witness *588 Gray had not "previously identified [defendant] as such" within the meaning of the pretrial notice requirement.
To treat nonidentification results, under circumstances such as occurred here, as mandating 710.30 notifications would inappropriately and needlessly extend the reach and purport of the statute (compare, People v White, 73 N.Y.2d 468, 474, cert denied 493 US 859, supra). In White, the Court refused to extend the reach of CPL 710.30, stating:
"Although a literal interpretation of the language of CPL 710.30 might suggest that an in-court identification at a Wade hearing or a previous trial constitutes a `previous identification', and thus should be covered by its provisions, there is no suggestion in the legislative history or in the background surrounding the statute that it was intended to cover previous in-court identifications" (id., at 474).
The record also allows for no possibility of pretextuality, disingenuity or negligence on the part of the People in failing to give the customary, required notification. None was required. The People were thus under no obligation, in these circumstances, to provide defendant with notice pursuant to CPL 710.30 (1) as to witness Gray because, in addition to there being no previous identification, the People did not intend to call Gray as a witness. Even if we were to treat the police efforts to get witness Gray to make an identification during the early investigation stage as ambiguous, the record supports the conclusion that the prosecutor had no intent to call Gray, precisely because of the tenuous to nonexistent evidentiary nature of the early efforts at identification. Inasmuch as the requirement to give a 710.30 notice as to this individual did not arise within the statutory time limit, there is no occasion to address the statutory good cause exception, the focus of the dissenting opinion (CPL 710.30 [2]).
In any event, when circumstances later developed, as the trial was about to begin, that witness Gray would at that point be willing and able to identify the defendant and would be called by the People to testify, all appropriate procedural safeguards, including a second Wade hearing, were afforded to defendant (see, CPL 710.30 [2]; cf., People v O'Doherty, 70 N.Y.2d 479).
We have considered defendant's remaining contentions and conclude that they are without merit.
*589 Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge KAYE (dissenting). Because the majority misapplies CPL 710.30, I respectfully dissent.
CPL 710.30 (1) (b) provides:

"Whenever the people intend to offer at a trial * * * (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered" (emphasis added).
Late notice is permitted only upon a showing of "good cause" (CPL 710.30 [2]).
It is clear from the statute that defendant must be served with notice of intention whenever (1) the People intend to offer testimony at trial (2) regarding an observation of the defendant at the time or place of the offense (3) by a witness who has previously identified defendant. (See also, CPL 710.20 [6] [describing type of potential identification evidence subject to suppression].) As a brief review of the facts establishes, once the People determined to use Gray's testimony, CPL 710.30 applied.
Days before trial commenced, the People for the first time informed the court of their intent to offer testimony from Arthur Gray that identified defendant as the assailant. In response to defendant's objection that the People had failed to comply with the notice requirements of CPL 710.30, the People offered the explanation that Gray had only come forward with a "positive" identification of defendant in recent days. A Wade hearing was then held.
The majority is simply wrong when it states that the Wade hearing concentrated "solely on Gray's potential testimony at trial," concluding that no pretrial identification procedure took place within the meaning of CPL 710.30. To the contrary, the hearing court stated, "[t]he purpose of our Wade hearing today is to make sure that if [Gray] seeks to make an in-court identification during the course of this trial * * * that comes from his recollection and not any procedures * * * back when the pictures were being shown to him."
*590 The hearing testimony established that on the night of the shooting Gray was unable to identify anyone from the numerous computerized photographs he was shown. It was uncertain whether defendant's picture was even included in that array. Several days later, however, Gray was shown just six photographs. Upon viewing defendant's photograph, as he later testified, he saw "the person, the face that was from two nights ago." He selected defendant's photograph, telling the police officer that "it looks like" the perpetrator although he "can't be sure" and "can't get involved" because he was going away to college. After the viewing, Gray and another witness compared their experiences and learned that both had selected defendant's photograph from the array. More than a year later, just prior to trial, the People determined  under circumstances not fully explained  that Gray now believed he could identify defendant. At that point, the People decided to offer his testimony at trial, and provided defendant with notice of that intent.
At the conclusion of the Wade hearing, the court stated that it was considering admissibility of "potential testimony regarding an observation made of the defendant on an occasion relevant to this case." It summarized the respective burdens of proof concerning a pretrial identification procedure and made findings of fact concerning the viewing of the photographic array, concluding the procedure was not unduly suggestive.
Unquestionably, the People intended to offer Gray's testimony at trial once he notified them that his identification was certain. Unquestionably, Gray's prospective testimony concerned "an observation of the defendant * * * at the time or place of the commission of the offense." Unquestionably  as the hearing court determined  Gray had identified defendant previous to trial. These facts brought Gray's testimony within the ambit of CPL 710.30, which by its terms applies whenever the People intend to offer such testimony, not just within the first 15 days after arraignment.
In light of the findings of fact and conclusions of law concerning the suggestiveness of the pretrial identification procedure, it is puzzling indeed that the majority concludes no pretrial identification took place here, and that CPL 710.30 did not apply to this testimony. This is the sort of late notice that the statute seeks to prevent, and to excuse only if there is good cause.
In People v O'Doherty (70 N.Y.2d 479), we held that where *591 the People do not establish good cause for delay, it is error to permit late notice and admit such evidence at trial. Lack of prejudice to a defendant resulting from the delay "does not obviate the need for the People to meet the statutory requirement of good cause before they may be permitted to serve a late notice" (id., at 481). Acknowledging a legislative policy determination that the sanction of preclusion would foster efficient conduct of criminal prosecutions, we emphatically rejected the People's complaint that preclusion is not "an acceptable price to pay to achieve the desired goals" (70 NY2d, at 489). The majority now retreats from O'Doherty by permitting late notice of an identification without a showing of good cause simply because the People did not intend at the outset to use that testimony.
It is to compel the People to act with efficiency and foresight that CPL 710.30 permits late notice only upon a showing of good cause. Because "good cause" is the sole standard for determining whether identification testimony should be permitted notwithstanding late notice, none of the other considerations put forward by the majority serves to excuse the People's late notice. In particular, the fact that a Wade hearing was held here on the admissibility of Gray's testimony did not excuse late notice. Although CPL 710.30 (3) provides that a defendant who has moved to suppress evidence may not challenge a failure to provide timely notice, that exception is inapplicable where  as here  the defense unsuccessfully moved to preclude for late notice, and the suppression hearing was held on the court's own motion (People v Amparo, 73 N.Y.2d 728). In approving the "procedural safeguard" of a Wade hearing as a corrective to late notice, the majority  ignoring our holding in Amparo  creates an alternative remedy for violation of the notice requirement. The sole remedy authorized by statute, however, is preclusion.
While the People may have been able to establish that Gray's change of heart as to the certainty of his identification constituted good cause, no such claim was made. The People's present claim concerning the circumstances leading to their change of intention about Gray's testimony was not fully presented. Instead, the People asserted they were altogether exempt from any notice requirements, despite the plain language of the statute. Accordingly, the People failed to meet their burden of establishing good cause for late notice.
It was error to deny defendant's motion to preclude upon a *592 determination that defendant was not prejudiced, and I would therefore reverse the Appellate Division order and order a new trial.
Order affirmed.