OPINION OF THE COURT
Lee Cross, J.
Defendant moves to preclude the People from introducing in evidence a written statement which he made, on the grounds that proper notice of it was not given to him pursuant to CPL 710.30 (1) (a). That motion is denied. Defendant also moves to suppress his written and oral statements, arguing that the People have not proven that he knowingly, intelligently and voluntarily waived his constitutional rights prior to making the statements. That motion is denied. Finally - defendant moves to preclude the People from introducing into evidence in-court identifications of him by the complainant and an eyewitness on the grounds that no notice of his prior identification by them was given to him pursuant to CPL 710.30 (1) (b). That motion is also denied.
On May 2, 1991, the defendant was arraigned on charges of petit larceny and criminal possession of a weapon in the fourth degree. The complaint alleged that at about 3:00 p.m. on May 1, in a subway station, the defendant and two unapprehended others grabbed one Johnny Chan around the neck, displayed a box cutter and stole his walkman radio from him. The People served the corroborating affidavit of Mr. Chan at arraignment and announced ready. The defense was served with a CPL 710.30 (1) (a) notice. The standard form notice in Kings County lists five categories of statements vertically down the page (written, stenographic, audio tape, video tape and oral statements) and five facts about each type of statement horizontally across the page (which defendant, date, time, place and person to whom made). In this case information was only filled in across the lines for oral statements. No particular defendant was specified as the defendant was charged alone in this case. The date given was May 1, 1991, the time was 6:20 p.m., the place was TD 34 and the person to whom made was Police Officer McNamara Central Robbery Unit. Below this grid of information about statements there is a line which asks for "Substance of oral statement”. That was filled in as follows: "I was on the platform and I saw the robbery and I told (CW) to go help his friends.” No CPL 710.30 (1) (b) notice was served at arraignment.
On May 16, the defendant moved to suppress his statement. *232 In answers filed June 6, the People indicated that they intended to use the defendant’s statement on their direct case. They said that the defendant was advised of his Miranda rights at 4:00 p.m. and again at 5:00 p.m. at TD 34 and that the statement was made at 6:20 p.m. They appended to their answer a copy of a written statement by the defendant from May 1, 1991 in which the interview began at 5:50 p.m. and ended at 6:20 p.m., as well as copies of numerous police reports, which encompassed, among other things, interviews with the complainant and eyewitness. The reports indicate that after the robbery, the robbers fled down the subway tracks. The complainant reported the robbery at the token booth. The complainant and the eyewitness were then taken on an area search by the arresting police officer. At Bay Parkway and 9th Street, the complainant and the eyewitness pointed out the defendant to the police officer and he was arrested less than half an hour after the crime.
On June 12, the court entertained argument as to what motions hearings should be held. I ordered a Huntley hearing. I ruled that the identification had not been police-arranged, so that there was no Wade issue to be decided.
On August 13, a hearing was held before me. Police Officer Daniel McFarlane, the arresting police officer, and Salvatore Pennine, the defendant, testified. Officer McFarlane said that after he arrested the defendant, he read him his Miranda rights at 4:00 p.m. After the defendant said he was willing to answer questions, McFarlane did not talk to him, but, rather, called the Central Robbery Unit and asked that a detective come down to District 34 to do the interview. At about 6:00 p.m., Officers McNamara and Mount arrived. In Officer McFarlane’s presence, Officer McNamara again read the defendant his Miranda warnings and again the defendant agreed to answer questions. The defendant said that he was at the train station waiting for his girlfriend when he observed a robbery going on and he asked one of the people there why he was not helping his friends. Immediately after he made the oral statement, he was asked if he wanted to make a written statement. He said "yes”. He was given a sheet of paper with preprinted Miranda warnings on it. He answered "yes” to each Miranda question, signed his name and then wrote out a narrative, longhand, as follows: "I was on my way to see my friend on 20 Avenue and I waited for her on the platform then I saw these guys asking these Chinese guys for money so I went upstairs *233 to see if she was near the token booth but she wasn’t there so then I went back downstairs and I saw one of the guys beating one of the victims and using an orange object and then I asked the guys to help your friend so they refused so I then turned to my business and then I was talking to a friend of mine. So then I saw those two guys run off to the tracks. So the train came I got on the train and went to 18 Av so I could look for a pair of sneakers I could buy so I got back on the train and went to Bay Parkway and the were I was arrested on West 9th Street”. The interview concluded at about 6:30 P.M.
The defendant testified that he was 17 years old, with no prior criminal record and that he was in tenth grade. He said that after he was arrested, Officer McFarlane read him only the first of the six Miranda rights, namely, that he had the right to remain silent and to refuse to answer any questions. After asking him if he understood and after the defendant said "yes”, Officer McFarlane said nothing more to him. When Officer McNamara arrived, the defendant was taken into a room with three men in suits. Officer McFarlane was not in the room. After the defendant made his oral statement, McNamara read him Miranda rights numbers 1, 2, 4 and 6, but omitted numbers 3 and 5. At the hearing, the defendant was able to read all of the Miranda rights aloud without difficulty from the written statement he gave. He read aloud the statement he gave. He admitted initialing each of the Miranda rights on the written statement and writing out the statement without the police telling him what to say. Whenever he made a mistake, he crossed out the mistake and initialed the change. He denied that the initials "SP” at the bottom of the page were his.
1. Should the Defendant’s Written Statement Be Precluded?
Any discussion of preclusion of a defendant’s statement for want of proper notice under CPL 710.30 (1) (a) must begin with People v O’Doherty (70 NY2d 479 [1987]). The O’Doherty decision enforces a statutory scheme under which a defendant is given notice within 15 days of arraignment, of statements which the prosecution intends to use in its case-in-chief. The defendant is then given an additional 30 days within which to decide not to oppose the admission of the statements or to move to suppress such statements. O’Doherty holds that the purpose of CPL 710.30 is to provide a defendant with the opportunity to obtain a pretrial ruling on the admissibility of *234 the statements as well as to make sure that such motions are made and decided swiftly and efficiently. (Supra, at 488.)
CPL 710.30 (1) requires the People to serve upon a defendant notice of their intention to offer at trial evidence of statements and out-of-court identifications, "specifying the evidence intended to be offered”. The statute does not further define what sort of specificity is required. There have been numerous cases where defendants have claimed that the notice given was insufficient in some regard or another, e.g., that the notice did not adequately summarize what the statement was (People v Couch, 74 AD2d 582 [2d Dept 1980]; People v Miller, 154 AD2d 717 [2d Dept 1989]), that the notice omitted important particulars of the statement (People v St. Martine, 160 AD2d 35 [1st Dept 1990]; People v Cooper, 158 AD2d 743 [3d Dept 1990]; People v Grandenetti, 139 Misc 2d 614 [Sup Ct, NY County 1988]), and that the notice specified a statement at one time and place and the People are seeking also to admit another statement at a different time and place (People v Olds, 140 Misc 2d 458 [Sup Ct, Bronx County 1988]; People v Gray, NYLJ, Aug. 2, 1991, at 22, col 2 [Sup Ct, NY County 1991]). CPL 710.30 (3) provides that in the absence of notice, the evidence cannot be admitted unless the defendant has, "despite the lack of such notice, moved to suppress such evidence and such motion has been denied”.
Any decision on whether or not to preclude a statement for want of adequate notice should not lose sight of the purpose behind this statutory scheme and the O’Doherty decision (supra). This scheme is designed to tell a defendant what statements of his the People intend to use so that he can make an intelligent decision as to whether or not to move to suppress them. The decision as to whether or not to move to suppress will be based on a number of factors. A defendant may decide that he does not object to the admission of a statement since it fits in with his defense, i.e., that it is not really inculpatory, given the defense he intends to raise. In order to be able intelligently to make this decision a defendant must know what he allegedly said. If a defendant is not told all of the possibly inculpatory things which he allegedly said, he cannot make a reasoned decision as to whether or not to move to suppress the statement. This explains those decisions which have precluded the People from offering into evidence statements, notice of which omitted salient parts of the statement allegedly given. (People v St. Martine, supra; People v Grandenetti, supra.)
*235 A defendant may also decide not to move to suppress a statement when it is clear to counsel that at the time and place the statement was given, the defendant was sufficiently apprised of his rights and he waived them. But, a waiver of rights at one time and place does not mean that the defendant waived his rights at all times and places. This explains those decisions which have precluded the People from offering into evidence statements given at a different time and place from those which were noticed, even though they were in sum and substance the same as the noticed statements. (People v Olds, supra; People v Gray, supra.)
In this case, however, notice was given both as to what the defendant said and as to the time, place and person to whom the statement was made. The only thing the defendant was not told in the CPL 710.30 (1) (a) notice was that at that one time and place, he made the same statement both orally and in writing. This case is closest factually to People v Wilson (144 AD2d 980 [4th Dept 1988]), where a single notice was held to be sufficient to admit virtually identical oral and written statements.
Would the fact that the defendant made both an oral and a written statement at the same time and place make any difference in whether or not he would move to suppress the statements or in his preparation for the hearing? The answer is clearly "No”. The defendant here moved to suppress the statement and clearly would have done so whether the statement was oral or written or both. If the written statement were precluded because the notice which was given checked the box denominated "oral” and did not also put a check mark next to "written”, it would exalt form over substance and pervert the truth-finding function of the law for no reason which would improve the functioning of the system. This motion is, therefore, denied.
2. Should the Defendant’s Written and Oral Statements Be Suppressed?
While the defendant is a neophyte in the criminal justice system and while he did not strike the listener as being of superior intelligence, he clearly voluntarily and knowingly made the oral and written statements which he gave to Officers McNamara and McFarlane. The defendant testified that McFarlane read him the first of the Miranda warnings at 4:00 p.m., but not the rest of them. That is highly unlikely. What doubtless happened is that McFarlane read him all of *236 the warnings, but the defendant cannot now remember them all. He testified that later McNamara read him warnings 1, 2, 4 and 6, but omitted warnings 3 and 5. That again is highly suspect testimony, especially since the defendant could read all of the warnings aloud without difficulty in court and he initialed each of the warnings before giving his written statement. Doubtless he was given all of the warnings before he made his oral statement and he again read all of them before he gave his written statement.
The defendant’s written statement is also reasonably literate. While there are a few spelling errors and not much punctuation, he can clearly read and write English. The Miranda warnings are not complex or difficult to understand. I have no doubt that the defendant made his statements voluntarily and knowingly in an attempt to clear himself of these charges. The statements are exculpatory on their face and are inculpatory only in that they put the defendant at the scene of the crime and thus bolster the complainant’s identification of him. The motion to suppress these statements is denied.
3. Should the In-Court Identifications of the Complainant and the Eyewitness Be Precluded?
The defendant moves to preclude the in-court identification testimony of the complainant and the eyewitness because the People failed to serve CPL 710.30 (1) (b) notice within 15 days of his arraignment. The complainant and an eyewitness had been taken on an area search by the arresting police officer and had pointed out the defendant less than a half hour after the crime. This court has already ruled that a Wade hearing was unnecessary since the identifications were not police-or-ranged.
While the notice requirement under CPL 710.30 (1) (b) reads rather broadly, the cases have held that it is not so all encompassing as it seems. For instance, notice is not required where the parties are known to each other. (People v Tas, 51 NY2d 915 [1980].) In Tas, the Court of Appeals said that when the parties are known to each other, there is no "identification” within the meaning of CPL 710.30. Also, notice is not required where the subject identification is confirmatory in nature. (People v Rolison, 141 Misc 2d 318 [Sup Ct, NY County 1988].)
To begin with this court properly denied the defendant’s *237 request for a Wade hearing. People v Rios (156 AD2d 397 [2d Dept 1989]) is directly in point. In that case, the victim flagged down the police, gave the officers a description of the robbers and then pointed out the perpetrators to the police a few blocks away from the scene of the crime. The Appellate Division held that no Wade hearing needed to be held as the identification was not the product of a procedure arranged by the police. (See also, People v Dukes, 97 AD2d 445 [2d Dept 1983]; People v Amaro, 105 AD2d 708 [2d Dept 1984].)
As previously noted the main function of the notice requirement is to provide the defendant with the opportunity to challenge the admissibility of a statement and/or identification testimony via a hearing. It then logically follows that if the prior identification is not of a type where a hearing should be ordered then notice should not be required. In People v Newball (76 NY2d 587 [1990]), the Court of Appeals reversed a conviction based on an identification by an undercover police officer some 28 days after the crime for want of CPL 710.30 notice. The court held that the identification was "police-or-ranged” and not merely confirmatory given the length of time which had passed since the crime. The court said that since a hearing was called for, notice was required. The court said, "this case presents precisely the type of special circumstances which call for a CPL 710.60 (4) hearing and therefore implicate the notice requirements of CPL 710.30”. (Supra, at 592 [emphasis supplied].) The reverse is also logically true — when no hearing is necessary because the identification was not police-arranged, no notice need be given. In People v Hooker (114 AD2d 514 [2d Dept 1985]), the court found that no error had been committed by the People in failing to give the defendant notice pursuant to CPL 710.30 where the rape victim would testify to an identification that occurred independent of law enforcement activity.
Obviously the wiser course for the People is to give notice in every case where there is any possibility that a court might direct that a hearing be held. The court need not direct a hearing just because notice is given. But, if no notice is given and a court deems that a hearing should have been ordered, the price the People must pay is not just a hearing, but rather preclusion of the identification altogether. That heavy penalty should suffice to cause the People to give notice generously.
*238 However, in this case, the identification was not police-arranged but rather was spontaneous and self-generated and so neither a hearing nor notice was required. As such, defendant’s motion is denied and the in-court identification testimony of the complainant and the eyewitness is admissible.