OPINION OF THE COURT
Rosalyn H. Richter, J.
The defendant has moved to preclude the introduction of his statements in the intoxicated drivers examination (IDE) because the prosecution did not serve timely notice pursuant to CPL 710.30.
At the arraignment, the prosecutor served notice pursuant to CPL 710.30 (1) (a) that defendant had stated in substance, "I had a couple of beers and a couple of shots.” The prosecutor also provided defense counsel with a copy of the IDE, which was prepared by the police after the defendant’s arrest. This form contains the defendant’s answers to a series of questions about his activities on the night of the charged incident and includes an admission that he had consumed two beers and two shots of vodka shortly before his arrest. However as often occurs at Criminal Court arraignments, the prosecutor did not serve notice pursuant to CPL 710.30 that he intended to introduce the IDE statements at trial.
The service of the IDE on defense counsel at the arraignment was not sufficient to comply with the notice requirements of CPL 710.30. (See, People v Phillips, 183 AD2d 856 [2d Dept 1992]; People v Welgoss, NYLJ, Feb. 7, 1992, at 27, col 2 [Crim Ct, Kings County]; People v Pennino, 152 Misc 2d 230 [Crim Ct, Kings County 1991].) The People are not excused from their obligation to serve notice of the statements in the IDE merely because they served notice of another statement allegedly made by the defendant. (See, People v Olds, 140 Misc *404 2d 458 [Sup Ct, Bronx County 1988].)[1]
Moreover, the defendant had every right to assume from the manner in which statement notice was given at the arraignment that the IDE statements were not included in that notice. The People made no reference to the IDE when they were asked at the arraignment to serve any notices. (Cf., People v Black, 177 AD2d 1040 [4th Dept 1991].) Rather, the IDE, which was included in a packet of police forms, was not served on defense counsel until after the People had finished giving statement notice.
The People now contend that preclusion is not required because the defendant waived this request by moving in his omnibus motion to suppress "any and all statements.” However, in People v St. Martine (160 AD2d 35, 40 [1st Dept 1990]), the Court rejected a similar argument holding that the defendant did not "by seeking to suppress any and all statements, in effect waive his right to object to the admission of statements of which he was at the time of the motion still unacquainted.” To the extent that the decision in People v Kennedy (Crim Ct, NY County, Oct. 19, 1992, docket No. 92N036562), which is relied on by the People here, reaches a different conclusion, this court is bound by rules of precedent to follow the Appellate Division ruling in St. Martine.
In St. Martine (supra), unlike the instant case, the defendant did not become aware of the statement that was not included in the original notice until after he had filed his omnibus motion. However, this fact is insufficient to distinguish the St. Martine case. The crucial question is not whether defendant knew about the existence of the statement, but rather whether he knew that the People intended to introduce the statement on their direct case at trial. Since the People had not included the IDE statements in their CPL 710.30 notice, defense counsel in the instant case had every right to assume that the People did not plan to use these statements on their direct case. Counsel therefore had no reason to include these statements in his pretrial motion to suppress. Accordingly, this court finds that the request to *405 suppress "any and all statements” covered only those statements for which notice had been given and not every statement contained in the police paperwork served at the arraignment.
To reach a different conclusion would undermine the legislative purpose of CPL 710.30. As the Court noted in People v O’Doherty (70 NY2d 479, 487-488 [1987]), the section serves the purpose of fostering the "efficient conduct of criminal prosecutions.” Thus, all notices should be served within the same 15-day period and not in a piecemeal fashion. If the People’s argument in the instant case were adopted, they would have little incentive to see that their statement notice was complete. Rather, the People could simply provide defense counsel with copies of the police reports and memo books and then determine at a later date whether there were any statements in those documents that had not been included in the original notice.
The statement for which timely notice was given ("I had a couple of beers and a couple of shots”) is similar to one of the statements contained in the IDE (defendant admits drinking two beers and two shots of vodka). However, the similarity of the two statements is insufficient by itself to defeat the defendant’s motion for preclusion. (See, People v Olds, 140 Misc 2d 458, supra.) Rather, the courts have denied preclusion where the statement for which no notice was given was made at the same time and place as the properly noticed statement. (See, e.g., People v Cooper, 158 AD2d 743 [3d Dept 1990], revd on other grounds 78 NY2d 476 [1991]; People v Wilson, 144 AD2d 980 [4th Dept 1988]; People v Pennino, 152 Misc 2d, at 235, supra.) Neither the original statement notice nor the IDE indicated when or where the first statement was made. The People’s motion papers also did not establish when the defendant allegedly made the statement contained in the CPL 710.30 notice. Thus, the record provides no basis to find that the two statements were made under the same circumstances and the motion to preclude is granted.
The defendant also contends that his statements and the liquor bottle that was found in his car should be suppressed as the fruit of an unlawful arrest. At the hearing held before me, Police Officer Andre Fleury testified that at about midnight on April 15, 1992, he was working at a DWI checkpoint at Clinton and Stanton Streets in Manhattan. The checkpoint was set up so that all traffic was funneled into one lane. When the defendant pulled up to the checkpoint, Officer Fleury was *406 standing on the driver’s side of the defendant’s vehicle. Officer Fleury said something to the defendant, though he could not recall what he said. He also could not recall the defendant’s reply. However, he did remember that the defendant’s breath smelled of alcohol and his eyes were bloodshot and watery. Officer Fleury told the defendant to pull his car over and then told him to get out of the car. When the defendant stepped out, he was unsteady and admitted that he had been drinking. The defendant also took an alcosensor test, which showed a reading of .16. After the defendant was arrested, the police saw an empty bottle of vodka in the car.
Although this court found Officer Fleury to be a credible witness,[2] his testimony was insufficient to establish that the checkpoint here complied with the standards established by the Court of Appeals in People v Scott (63 NY2d 518 [1984]). In Scott, the Court held that the State’s interest in preventing death and injuries from drunk driving could be promoted by roadblocks provided that the roadblock was administered in a nonarbitrary manner. (See also, People v Ingle, 36 NY2d 413 [1975].) In evaluating the validity of a checkpoint, the court must consider "the degree of the intrusion of the procedure on the individual subjected to it, measured in terms of both its subjective effect and the degree of discretion vested in the officials charged with carrying it out.” (People v Scott, 63 NY2d, at 525.) The reviewing court must ensure that the roadblock was "being maintained in accordance with a uniform procedure which afforded little discretion to operating personnel, and that adequate precautions as to safety, lighting and fair warning of the existence of the checkpoint were in operation.” (Supra, at 526; see also, People v John BB., 56 NY2d 482 [1982] [upholding checkpoint in heavily burglarized area].)
In this case, Officer Fleury’s testimony failed to establish that there were any procedures in effect to limit the discretion of the individual officers operating the roadblock. No evidence was provided to show that the checkpoint was set up according to any written procedure or plan. The existence of such written guidelines was one of the critical factors in the Scott decision (supra). (See also, Michigan State Police Dept. v Sitz, 496 US 444, 450-452 [1990]; Webb v State, 739 SW2d 802 [Tex *407 Crim App 1987].) Officer Fleury also provided no information as to who determined the location and layout of the checkpoint. This court has no way to determine from the sparse evidence at the hearing whether the checkpoint was always located at Clinton and Stanton Streets or was placed there on a random basis only for that evening.
Furthermore, the record contains no evidence to establish that a supervisor reviewed the layout of the checkpoint. Although a supervisor’s review would not necessarily substitute for the type of written plan mentioned in Scott (supra), it would have provided at least some mechanism for ensuring that there was a control on the actions of the individual officers operating the checkpoint. (See generally, People v Peil, 122 Misc 2d 617, 621 [Just Ct, Dutchess County 1984].) Officer Fleury’s hearing testimony established that a supervisor was present immediately before he placed the defendant under arrest. However, Officer Fleury never stated when the supervisor arrived or what role the supervisor had in the over-all checkpoint operation.
The People contend that the checkpoint was operated properly because Officer Fleury stopped every motorist. Although this type of uniform practice is mentioned in the Scott decision (supra), it is only one indicia that the checkpoint is being operated in a manner that complies with the Fourth Amendment. No evidence was presented as to what Officer Fleury said to motorists when they pulled up to the roadblock. In fact, Officer Fleury testified that he was unable to recall what he first said to the defendant. His lack of memory was significant because Officer Fleury was certain that during this initial inquiry, he never asked the defendant or any other motorist "where they are going or whether they had been drinking.” Since he was certain that he did not ask either of these standard questions, both of which would have been proper, it is difficult to determine whether his inquiry unduly interfered with the privacy of the motorists.
The record was also bereft of any evidence that the police had any signs or other safety devices in place to alert motorists that they were approaching a checkpoint. No testimony was presented to show that the police had any flares or cones on the road, any special lighting or any police cars stationed in plain view of oncoming traffic. (Cf., State v Leighton, 551 A2d 116 [Me 1988]; Commonwealth v Trumble, 396 Mass 81, 483 NE2d 1102 [1985]; Little v State, 300 Md 485, 479 A2d 903 [1984]; State v Deskins, 234 Kan 529, 673 P2d 1174 [1983].) *408 Although Officer Fleury testified that all cars were funneled into one lane, this would not necessarily have informed motorists that there was a checkpoint ahead. Indeed, a motorist might have assumed that the police were redirecting traffic because of construction or an accident. In Scott (supra), the Court noted that the existence of signs or other visible indicia of police authority were essential to ensure that drivers were not unreasonably frightened.
The People argue that the Scott decision (supra) is not applicable because the checkpoint here was "fixed” and not a temporary roadblock. In Scott, however, the Court did not create different standards for temporary and permanent roadblocks, but rather indicated that both types of checkpoints must be evaluated by considering the intrusiveness of the checkpoint in relation to the governmental purpose involved. (Supra, 63 NY2d, at 527.) To the extent that the Supreme Court’s decision in United States v Martinez-Fuerte (428 US 543 [1976]) indicates that permanent checkpoints may be less intrusive than temporary or roving checkpoints, the roadblock here cannot be considered a permanent checkpoint. The checkpoint in Martinez-Fuerte was set up outside a border patrol building, which was a permanent structure. No evidence was presented to show that such a structure was involved in the instant case.
Furthermore, unlike Martinez-Fuerte (428 US, at 559, supra), no proof was presented to show that the checkpoint location was chosen by supervisory personnel or that the placement of this roadblock was part of an over-all police department plan. (See also, Michigan State Police Dept. v Sitz, 496 US, at 451-452, supra.) In addition, the Supreme Court in Martinez-Fuerte specifically noted that there were ample warning signs to inform motorists that the checkpoint was ahead. Since no testimony was presented at the instant hearing to establish that such signs were posted, the checkpoint here would not even meet the standards set forth in the Martinez-Fuerte decision.
Accordingly, the hearing testimony failed to establish that the checkpoint was established and operated in a manner that complied with constitutional requirements. This court therefore finds that the police had no right to stop and to arrest the defendant. All of the evidence, including the liquor bottle and the statements, which were obtained as a result of the arrest, must be suppressed.

. To the extent that People v Schoendorf (148 Misc 2d 76 [Sup Ct, Suffolk County 1989]) suggests that preclusion is not required if the People mention the statement at some point during the arraignment, this court respectfully declines to follow this decision. Moreover, the Appellate Division ruling in Phillips (183 AD2d 856, supra), which was decided after Schoendorf, raises serious questions about the continuing validity of the case.

. This court did not credit the testimony of Charles Porter, a defense witness, who sought to establish that Officer Fleury was not the individual who questioned the defendant at the checkpoint.