OPINION OF THE COURT
Ute Wolff Lally, J.
The defendant is charged with driving while intoxicated (Vehicle and Traffic Law § 1192 [2]) and unlawful possession of a noxious material (Penal Law § 270.05). A Huntley, Mapp, Dunaway hearing was conducted on October 27, 1993. The parties filed memoranda of law.
FINDINGS OF FACT
On December 19, 1992 at approximately 12:50 a.m., the defendant was stopped at a sobriety checkpoint which had been set up on the entrance ramp from Hempstead Turnpike to the Northbound Meadowbrook Parkway. The sobriety checkpoint was in operation between the hours of 11:00 p.m. and 3:00 a.m. during which time every vehicle entering this ramp was stopped. The area was marked by a bright yellow sign reading "Sobriety Test Point” which was illuminated by the headlights of a police vehicle. The right lane of the entrance lane was closed off and marked by flares and cones.
Trooper Holman, one of five Troopers participating in this endeavor, stopped the defendant, informed him that this was a sobriety checkpoint, and asked for his license and registration. At this time the Trooper noticed that defendant had bloodshot eyes, slurred speech and a smell of an alcoholic beverage. In response to the Trooper’s questions defendant stated that "he was coming from a friend’s house in Baldwin, was driving home and had consumed two drinks.” The Trooper then asked the defendant to step out of the vehicle and administered a field sobriety test which the defendant failed. Trooper Holman then placed the defendant under arrest for driving while intoxicated. Upon searching the defen *468 dant, incidental to the arrest, a container of CS teargas was discovered in his right jacket pocket.
Some time prior to 11:00 p.m. that same evening, Trooper Holman had attended a meeting conducted by a supervisory officer who gave instructions on the operation of the forthcoming sobriety checkpoint. At this meeting he did not receive written or detailed oral instructions except that every single car was to be stopped. Trooper Holman did not recall receiving any further guidelines or criteria to be employed after a stop and relied solely on his prior DWI detection training which he had received at the police academy. Nor was he aware of any written procedures regarding his conduct at the sobriety checkpoint.
Defendant argues that the stop of defendant failed to meet constitutional standards in that the Trooper did not rely on any detailed written or oral instructions in determining which vehicle to stop and when to request the performance of a field sobriety test.
It is, of course, well established that the State has a substantial interest in curbing drunk driving and that roadblocks are permissible to achieve that result provided they are operated in a nondiscriminatory and nonarbitrary manner. (People v Ingle, 36 NY2d 413 [1975]; People v Scott, 63 NY2d 518 [1984].) This requirement is usually met by showing that the stops were conducted in conformity with elaborated precinct directives or guidelines. (People v Vails, 170 AD2d 550 [2d Dept 1991]; People v Genn, 144 Misc 2d 596 [Sup Ct, Bronx County 1989].) These detailed instructions are intended to insure that the individual police officer’s conduct making the stop is uniform and evenhanded.
Turning first to the manner in which defendant’s vehicle was stopped on the day in question, the evidence showed that the Troopers were instructed to stop every car and that every car was indeed stopped. Therefore, no opportunity for discrimination or arbitrary choices existed. Nothing can be simpler to follow or less arbitrary than an instruction to stop every car. Unlike the Scott case (supra) there were no roving checkpoints and similar to Scott the area was adequately marked and lighted. Therefore, the initial stop did not violate defendant’s Fourth Amendment rights.
The second issue raised is whether a police officer after an initial legal stop can rely on his prior DWI detection training to determine whether reasonable suspicion exists to *469 administer a field sobriety test to the driver. To put it another way, did the failure to provide explicit and detailed guidelines relative to the instant stop violate the requirement that sobriety checkpoints be conducted in a uniform and nondiscriminatory manner? Defendant argues that this failure prevents the court from measuring the reasonableness of the Trooper’s action and, therefore, violates the standard established by People v Scott (supra). The court disagrees. Although the Scott Court approved of the procedures and instructions provided by the County Sheriff to his Deputies for the purpose of reaching their conclusion as to a driver’s intoxication, there was no indication as to whether or not these Deputies had any prior training in DWI detection nor did the court rule out any other manner in which such a determination can be reached. While it is true that Trooper Holman exercised his discretion in determining who was to exit his car, his decision was based upon his observation of the defendant and his prior DWI detection training. It would be illogical to assume that discretion based on prior generalized training is any different than the discretion based on training pertaining to the particular roadblock in question. Nor is it sound to suggest that drivers stopped at a roadblock are somehow entitled to a more elaborate training procedure than those stopped for a traffic infraction. Here the Trooper exercised no more or less discretion than he would have had he stopped defendant as a result of a traffic infraction.
The reasonableness of the Trooper’s action can be measured by the court based upon the Trooper’s observations of the defendant. Defendant’s slurred speech, bloodshot eyes and alcoholic odor of his breath clearly establish reasonable suspicion to believe that defendant was intoxicated and warranted Trooper Holman’s administration of the field sobriety test.
Accordingly, defendant’s motion to suppress the evidence seized and statements made by the defendant as "fruit[s] of the poisonous tree”, is hereby denied. (Wong Sun v United States, 371 US 471, 488.)