*832 OPINION OF THE COURT
Rosalyn H. Richter, J.
On January 27, 1994, this court held a combined Dunaway/ Mapp/Huntley hearing in the instant case and rendered oral findings of fact crediting the testimony of the prosecution’s only witness, Police Officer Mickens. The court issued an oral ruling denying the Huntley aspect of defendant’s suppression motion and reserved decision on the Mapp/Dunaway issue.
The defendant’s arrest on June 10, 1993, arose out of a DWI checkpoint that was being operated at 20th Street and Avenue C in Manhattan. Officer Mickens, who was stationed at the checkpoint when defendant first drove up, provided a detailed description of the checkpoint layout, which is summarized in this court’s oral findings of fact. Officer Mickens explained that he was not responsible for determining the layout of the checkpoint, but rather that was done by Sergeant Soto.
Officer Mickens explained that he stopped every car that drove up to the checkpoint. If his observations required further questioning of the driver, he would ask the driver to pull the car over to the side and another officer would take his place at the front of the checkpoint. In this case, Officer Mickens did not ask defendant any questions when he first saw defendant drive up. Rather, he immediately asked defendant to pull the car over because he smelled alcohol on defendant’s breath. Based on his subsequent observations, defendant’s admission that he had been drinking and a reading of .14 on the alcosensor test, Officer Mickens arrested defendant.
Defendant’s primary challenge to the prosecution’s case is that the evidence failed to establish that the checkpoint was operated in conformity with the requirements established by the Court of Appeals in People v Scott (63 NY2d 518 [1984]). In particular, defense counsel argues that the hearing evidence was deficient because it failed to show that the checkpoint was established and operated pursuant to any written plan or guideline. Counsel also argues that the proof failed to show why the checkpoint was set up at this particular location. Indeed, Officer Mickens acknowledged that he did not know why the sergeant decided to set up the checkpoint on this street, although Officer Mickens had worked checkpoints at this same location about 10 or 15 times before.
In People v Scott (63 NY2d 518, supra), the Court of Appeals indicated that DWI checkpoints could be upheld if the road *833 block was administered in a nonarbitrary manner. Thus, the reviewing court must ensure that the roadblock was "being maintained in accordance with a uniform procedure which afforded little discretion to operating personnel, and that adequate precautions as to safety, lighting and fair warning of the existence of the checkpoint were in operation.” (People v Scott, 63 NY2d, at 526.) Defense counsel now argues that the language in Scott about a "uniform procedure” requires proof of a written plan or regulations before a checkpoint may pass constitutional muster.
This court does not interpret this language in the manner now suggested by defense counsel. Rather, the Scott decision (supra) indicates that the People must establish that the checkpoint was operated in a uniform, nonarbitrary manner. (See also, People v John BB., 56 NY2d 482 [1982]; People v Ingle, 36 NY2d 413 [1975].) Although a written plan would be one way to meet this uniformity requirement, it is not the only way. (See, People v Snead, 160 Misc 2d 466 [Nassau County Dist Ct]; People v Egan, Crim Ct, NY County, Jan. 12, 1993, docket No. 92N047413.)[1]
Here, the testimony established that the checkpoint was operated in a consistent, nonarbitrary manner. All drivers who approached the checkpoint were questioned. No testimony was elicited to suggest that the individual officers had any authority to let some drivers pass through without stopping them. Furthermore, a supervisor was present to insure that the officers followed the required procedure.
In addition, both the location and the layout of the checkpoint were determined by the supervisor and not by the individual officers. As the Court of Appeals has indicated, a critical factor in evaluating any random search is whether "safeguards are provided to insure that the individual’s reasonable expectation of privacy is not subjected to unregulated discretion.” (Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 70 [1987].) No testimony was presented to show that any of the officers had the authority to revise the layout, alter the checkpoint procedure or to move the roadblock during the evening. Rather, the basic structure of the roadblock was determined by Sergeant Soto, whose involvement provided the necessary check on the dis *834 cretion of the individual officers. (Contra, People v Holley, 157 Misc 2d 402, 406-407 [Crim Ct, NY County 1993] [inadequate testimony about supervisor’s role in checkpoint].)[2]
Defense counsel has cited no case that specifically holds that the People must establish why the checkpoint was set up at this particular location. Although such testimony might be helpful in showing that the checkpoint was being operated on a nondiscriminatory basis, the evidence presented did not suggest that this location was chosen for any impermissible or abusive reason. Indeed, defense counsel is not now claiming that the police selected this site based on any improper motive.
Finally, People v Keta (79 NY2d 474 [1992]) and People v Davis (156 Misc 2d 926 [Sup Ct, Bronx County 1993]), both of which are cited in the defense memorandum of law, can be distinguished. In these cases, the courts invalidated administrative inspections holding that such searches must be conducted pursuant to detailed regulations and guidelines. However, the purpose of such regulations is to impose some restriction on the discretion exercised by the inspecting officials and "to minimize the risk of arbitrary and/or abusive enforcement.” (People v Keta, 79 NY2d, at 500.) Here, the uniformity of the checkpoint procedure and the presence of a supervisor minimized the possibility that such an abuse of discretion might occur.
Furthermore, unlike a complete search or inspection of a business, the initial stop at a DWI roadblock is brief and the intrusion on the individual’s privacy is relatively minimal. In addition, unlike the vehicle dismantling inspections in Keta (supra), it is beyond dispute that the State has a compelling interest in preventing individuals from operating automobiles while under the influence of alcohol. (See, People v Scott, 63 NY2d, supra, at 525.) Thus, given the reasons for this roadblock and the limited intrusion it presented, this court holds that, on balance, the government’s actions were reasonable even though no proof was presented that the checkpoint was established pursuant to any regulations. (See, People v John BB., 56 NY2d, supra, at 487-489.)
Since this court has found the initial stop to be lawful, the sole issue that remains is whether the officer’s observa *835 tions after the stop were sufficient to provide probable cause for the arrest. Officer Mickens’ testimony established that he saw several physical symptoms that reasonably led him to believe that defendant had been drinking. These observations, combined with defendant’s admission and the alcosensor reading, provided a lawful basis for the officer to arrest defendant. (See, People v Troche, 162 AD2d 483 [2d Dept 1990].) Therefore, defendant’s motions to suppress are denied in all respects.

. It is interesting to note that the decision in People v John BB. (56 NY2d 482, supra) makes no mention of the existence of any written plan governing the roadblock in that case.

. Officer Miekens’ testimony about the cones on the road and the police vehicles at the front and rear of the roadblock further distinguishes this case from this court’s decision in People v Holley (supra).