*295 OPINION OF THE COURT
Robert Raciti, J.
Defendant is charged with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2]). On March 3, 1999, a suppression hearing was conducted by this court on defendant’s motion to suppress his breathalyzer test results and his statements upon arrest. The court credits the testimony of Police Officer Steven Swanson, the People’s only witness, and finds the following facts.
At about 7:00 p.m. on September 6, 1998, Officer Swanson was assigned to the Orchard Beach detail in the Bronx. Officer Swanson, along with several other officers, had set up a preplanned motor vehicle checkpoint on Orchard Beach Park Drive South, in which every one in five cars was stopped. A sergeant supervised the operation in which from 5 to 10 police officers participated in checking returning beach-goers for intoxication. A “huge” sign announcing “checkpoint” was positioned about 100 feet before the cars were stopped. However, whenever the checkpoint threatened to create a traffic jam, the sergeant would suspend it and let traffic flow freely until the congestion dissipated. Defendant, driving a 1987 Honda, was stopped pursuant to that plan at around 7:20 p.m.
Upon stopping each car, Officer Swanson engaged the driver in conversation, asking him if he had a good day at the beach and if he had been drinking, and attempting to elicit any response in order to “get some breath coming out.” Officer Swanson asked defendant these types of questions and also asked for defendant’s license and registration. During this evaluation process, Officer Swanson noticed that defendant’s eyes were watery and bloodshot, that his movements were slow, and that there was an “odor of alcoholic beverage on his breath.” Officer Swanson then asked defendant to get out of his car; defendant did so and then agreed to take an “alco-sensor” field test, which registered .18.
At that point, defendant was arrested for driving while intoxicated. He was transported to the precinct and en route defendant was given his Miranda warnings, which Officer Swanson recalled from memory, rather than reading from a preprinted card. At the precinct, about one hour and 40 minutes after he was arrested, defendant agreed to take a breathalyzer test, on which he scored .19. At the precinct, defendant was also asked if he had been driving that night, and he responded “yes”. Asked if he had been drinking, defendant responded that he “had a few beers” while at Orchard Beach.
*296 Following the hearing, defendant moved to suppress his statements, the breathalyzer results and Officer Swanson’s observations on two grounds: first, that the evidence presented at the hearing was inadequate to establish the criteria upon which the roadblock had been based; second, that the original Miranda warnings given to defendant en route to the precinct were defective because they were not read from a preprinted card, and, in any event, ought to have been supplemented by a rereading of the warnings at the precinct.
The requirements for a constitutionally acceptable roadblock were set out by the Court of Appeals in People v Scott (63 NY2d 518, 526 [1984]). A valid checkpoint must be designed to safeguard a legitimate public purpose, and its execution must be nondiscretionary and nondiscriminatory. Here, the plan followed by Officer Swanson had as its purpose the interception of drunk drivers who were leaving Orchard Beach. Deterring drunk driving by focusing on an area as prone to such conduct as are the public roads immediately adjacent to a sporting event, rock concert or the beach, is certainly a legitimate public interest and proper police function. (See, People v Scott, 63 NY2d, at 525.)
Nor was the checkpoint at issue here subject to the discriminatory or discretionary whims of the officers who conducted it. Stopping one car in five is an adequately random method of conducting a nondiscretionary checkpoint (see, People v Scott, 63 NY2d, supra, at 526), and the evidence at the hearing established that it was implemented without any room for individual discretion on the part of the officers. In fact, the use of a large sign to give all drivers advance warning of the upcoming checkpoint served the proper purpose of lowering the anxieties of the drivers, and underscored the preplanned and non-discretionary nature of the roadblock. (See, Delaware v Prouse, 440 US 648 [1979].)
Contrary to defendant’s claim, it is not necessary for the People to establish at the hearing that the checkpoint was conducted pursuant to a written plan devised by police department superiors. As the First Department noted in People v Serrano (233 AD2d 170, 171 [1st Dept 1996], lv denied 89 NY2d 929), the absence of evidence that the plan was in writing “does not render it invalid, the only requirement being that the procedure followed be uniform and not gratuitous or subject to individually discriminatory selection”. Nor did the police allow caprice to creep into the procedure because the sergeant in charge occasionally suspended the checkpoint when its pres *297 ence caused excessive traffic congestion. Reasonable adjustments to what is essentially a nondiscretionary plan of stopping automobiles were specifically contemplated by the Court in People v Scott (63 NY2d, supra, at 526). Moreover, in this case, the court credits Officer Swanson’s testimony that the checkpoint was resumed, in the same manner it was earlier conducted, as soon as traffic had alleviated, thus leaving no reasonable possibility of police selectiveness vis-a-vis the critical issue of which cars would be stopped.
Finally, although defendant likens these facts to those in People v Holley (157 Misc 2d 402 [Crim Ct, NY County 1993]), the facts in Holley are distinguishable. Here, as noted, there was evidence of a systematic plan of stopping every fifth car at a location logically selected for its natural connection to drunk driving, a large sign warned drivers that they were approaching a checkpoint, and a sergeant supervised the operation and determined when the checkpoint would be suspended to relieve traffic and when it would be resumed — factors resolved unfavorably against the People in Holley. (See also, People v Collura, 160 Misc 2d 831 [Crim Ct, NY County 1994].) Consequently, the court finds that the checkpoint conducted in this case did not infringe upon defendant’s Fourth Amendment rights.
The court also finds that the Miranda warnings given to defendant en route to the precinct were adequate, even though they were recited from Officer Swanson’s memory rather than read from a preprinted card. As the Court noted in People v Vega (225 AD2d 890, 891 [3d Dept 1996], lv denied 88 NY2d 943), even if the officer “did not read defendant his rights from a card, as is the usual practice, but recited them from memory, the warnings given by this experienced investigator were adequate and fully conveyed to defendant his rights. No more is required”. (Citing California v Prysock, 453 US 355, 359; People v Bartlett, 191 AD2d 574, 575, lv denied 81 NY2d 1010.) Likewise, since the Miranda warnings had been recited to defendant less than two hours before he was questioned at the precinct, there was no requirement that those warnings be reread before he was questioned. Therefore, defendant’s motion to suppress is denied in all respects.